## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : Case No. 25-cr-000167- |
| v. | : |
| | : |
| **BRIGETTE ROBERTSON,** | : |
| | : |
| Defendant. | : |

### UNITED STATES' MEMORANDUM IN AID OF SENTENCING

The United States, by and through the undersigned counsel, respectfully submits this Memorandum in Aid of Sentencing. As described herein, the Defendant is being sentenced on one count of violating 18 U.S.C. § 242 (Deprivation of Rights). A review of the Defendant's criminal record and the Defendant's conduct during the incident in question supports the conclusion that the Defendant's actions were violent, unreasonable and warrant a one-year period of incarceration.

In the Indictment filed on June 9, 2025, the Defendant was charged with one felony count of deprivation of constitutional rights in violation of 18 U.S.C. § 242. The Defendant subsequently pled guilty on July 22, 2025, to a misdemeanor under 18 U.S.C. § 242. In the plea agreement, the parties anticipated that, in the case of a felony conviction, the final offense level would be 13, resulting in a guideline range of 12 to 18 months of imprisonment. Based on the foregoing, the United States respectfully requests for the Court to sentence the Defendant to one year of incarceration.

1

## THE DEFENDANT'S VIOLENT CONDUCT

On June 24, 2023, Brigette Robertson who was employed as a Special Police Officer (SPO) by Special Protection Services, LLC at a McDonalds at 3901 Minnesota Avenue N.E., Washington, D.C. engaged in a physical altercation with the victim who was causing a disturbance upon entering the premises. Robertson initially engaged the victim in an aggressive verbal exchange that escalated to a physical fight. The physical struggle between Robertson and the victim began at the door and continued throughout the restaurant. During the altercation, Robertson discharged pepper spray into the victim's eyes. Robertson was even able to handcuff one of the victim's hands during the struggle.

The Metropolitan Police Department was called to the scene and took control of both the situation and victim. In body camera footage obtained from the responding police officer, upon arriving at the scene Robertson and the victim were entangled, but the violent struggle between Robertson and the victim had ended. The MPD officer gained control of the situation, seized the handcuffed arm of the victim, and allowed Robertson to disengage. Robertson proceeded to gather her belongings as the officer took control of the victim. As Robertson collected herself, she initially attempted to grab the handcuffs, but the officer ordered her to step away. The victim remained lying on the floor under the effects of the OC spray and control of the officer. Despite the victim's defenselessness and cooperative behavior Robertson reapproached and stomped on her face as pictured below.



After Robertson's stomp on the victim's face, bodycam footage displays the resulting injury. The victim laid helpless on the floor, blood streaming from the injury, and crying while being unable to see. The victim was so disoriented from the stomp and OC spray that she was unable to ascertain who had assaulted her. The victim continued to lay on the floor breathless and defenseless until the Metro PD officer helped her into a seated position on the floor. In the seated position the victim cried in pain, asking for help and who assaulted her. Because the victim had blood streaming out of her mouth she was taken to the hospital and assessed for her injuries. Pictured below is the visible injury sustained by the victim.



Robertson's stomp to the victim's face was excessively violent. The stomp was not in self-defense. Rather, it was a willful and intentional effort to inflict pain. Because the MPD had gained control of the arrest, Robertson had no legitimate law enforcement objective and thereby violated the victim's constitutional right to be free from the use of unreasonable force. The injury was a direct result of Robertson's willful, unreasonable and excessive stomp.

I.     **SENTENCING GUIDELINES**

    **A.  The Guidelines Calculation for the Offense**

In the plea agreement, for reference, the parties estimated and agreed to Defendant's initial offense level of 16 and after a three-point reduction for acceptance of responsibility, the estimated offense level is 13. The parties specifically estimated the following as the Guidelines calculation:

| | | |
|---|---|---|
| U.S.S.G. § 2H1.1(a)(3) | Base Offense Level | 10 |
| <u>U.S.S.G. § 2H1.1(b)(1)(B)</u> | <u>Color of Law</u> | <u>6</u> |

4

| | | |
|---|---|---:|
| **Offense Level** | | 16 |
| U.S.S.G. § 3E1.1(a) | Acceptance of Responsibility | -2 |
| <u>USSG §3E1.1(b)</u> | <u>Acceptance of Responsibility</u> | <u>-1</u> |
| **Final Offense Level** | | 13 |

B.  **Sentencing Guidelines for Offense Level 13**

Pursuant to U.S.S.G. § 2H1.1(a)(3) because the Defendant used force against a person the proper base score is 10. Because U.S.S.G. § 2H1.1(a)(3) was applied, Defendant is ineligible for a U.S.S.G. § 4C1.1 adjustment since an alteration under U.S.S.G. § 4C1.1(a)(x) is redundant. Pursuant to U.S.S.G. § 2H1.1(b)(1)(B) (special offense characteristic) because the offense was committed under color of law the offense level is raised by six. Pursuant to U.S.S.G. § 3E1.1(a) the acceptance of responsibility warrants a two-point deduction in the offense level. Further, because the defendant assisted authorities in the investigation process and engaged in timely notification of authorities to enter a plea of guilty a one-point deduction is applied. Consistent with the agreed upon Estimated Offense Level, the Sentencing Guidelines range is 12 months to 18 months. However, the Defendant pled down to a misdemeanor. Thus, under 18 U.S.C. § 242 the recommended sentencing is one year. But, pursuant to *United States v. Booker*, 543 U.S. 220 (2005) the determinative factors for sentencing are 18 U.S.C. § 3553(a).

By entering into the plea agreement, the Defendant has already received a benefit for her acceptance of responsibility.  Indeed, by entering a misdemeanor plea, the Defendant's maximum exposure is one year.  For the reasons discussed below, a one year period of incarceration is warranted.

## II. THE 18 U.S.C. § 3553(a) FACTORS

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Sentencing Guidelines are no longer mandatory. However, the Court held that Sentencing Guidelines "should be the starting point and the initial benchmark" in determining a defendant's sentence *United States v. Gall*, 552 U.S. 38, 46, 49 (2007). Thus, courts "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id.* at 49.

This court should consider all the applicable factors set forth in 18 U.S.C. § 3553(a). *Id*. at 49-50. The § 3553(a) factors include, *inter alia*: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant; (4) the need to avoid unwarranted sentence disparities; and (5) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a)(1)-(7).

### A. The Nature and Circumstances of the Offenses

The Defendant's conduct at issue is egregious for two reasons. First, the Defendant was clearly identified as a security officer at the time of the incident. As such, the Defendant was vested with a significant amount of trust by the community and patrons of the McDonalds. This trust was relied upon by the injured victim who begged for help and protection after the physical altercation concluded. Second, the use of violence by the Defendant was excessive. At the time of the stomp the MPD officer had control of the situation and, therefore, the Defendant did not need to take any action. Additional force was unnecessary as demonstrated by the MPD Officer who handled the situation calmly and peacefully. At the time of the incident, the victim was compliant, handcuffed, and still unable to see as she experienced the effects of the OC spray. It was the role of the

6

Defendant to disengage from the altercation and comply with all instructions from the Metro PD officer. But this is not what Defendant did. Instead, the Defendant willfully engaged in further violence against a restrained and defenseless victim. The nature and circumstances of this offense are particularly serious, and the sentence should and must reflect this.

### B. The History and Characteristics of the Defendant

The Defendant has four prior arrests establishing a clear pattern of disregard for the community and the law.[1] In addition to breaking multiple traffic laws the Defendant has an additional charge for failing to stop after an accident involving damage. The Defendant has failed to display a level of responsibility and judgment commensurate with a member of law enforcement.

Beyond the Defendant's inability to follow basic traffic laws, she has been arrested multiple times for other criminal conduct. In 2013 the Defendant was charged with Second Degree Assault, Resisting Arrest, False Statement to Peace Officer, and Failure to Comply with Lawful Order. The Defendant has clearly shown herself unable to even speak truthfully and engage in a compliant manner with law enforcement. In 2015 the Defendant was charged with Assault with a Deadly Weapon, Possession of Firearm During Crime of Violence, Carrying a Pistol Without License, Unlawful Discharge of Firearm, and Possession of Unregistered Firearm. These charges arose after a Parking Enforcement Officer reported being fired at from two strangers which included the Defendant while the officer ticketed traffic violations. After the incident, a witness described the Defendant as boasting about her employment as a Special Police Officer. Because

---

[1] Specifically, the Defendant has been charged with driving without current tags, an expired license, suspended registration, suspended licenses, unauthorized window tints, failures to display registration, speeding (multiple times), failure to drive right of center, failure to stop at red light, failures to display license, driving in excess of prudent speed, failures to display vehicle headlights, failures to display registration card on demand, and having no permit.

the Defendant produced a different weapon than the one used in the shooting she was not charged, but the incident demonstrates her abuse of employment as a tool for propagating violence. In 2016 the Defendant was then charged with driving a Vehicle While Under the Influence of Alcohol, Driving Under the Influence of Alcohol Per Se, Driving While Impaired By Alcohol, Negligent Driving Vehicle in Careless and Imprudent Manner Endangering Property, Life, Reckless Driving Vehicle in Wanton and Willful Disregard for Safety of Person, Driving of Motor Vehicle Following Vehicle Closer Than Reasonable and Prudent, Driver Failure to Obey Properly Place Traffic Control Device Instructions, and Failure to Control Vehicle Speed on Highway to Avoid Collision. In 2022 Defendant was charged with Second Degree Assault and Mace/Chemical Device with the Intent to Injure. These charges arose after an individual participating in training at a hotel lightly brushed against the Defendant. The Defendant reacted with unjustifiable and excessive force, responding first with a threat to slap her and then spraying her with a can of mace in her pocket. This altercation is almost identical to the one at issue here. The only difference is Defendant's behavior at issue here displayed an insurmountable power imbalance. Clearly the lack of consequences in the former case incentivized Defendant to once again engage in the violent behavior at issue here. Regardless, the incident in 2022 demonstrates Defendant's tendency to escalate minor inconveniences into violence.

In addition to the Defendant's familiarity with the criminal justice system, as a regular party, through certifications and former employment the Defendant should have a heightened knowledge and responsibility to act in accordance with the laws. The Defendant has Firearms qualifications from Maryland and District of Columbia, Special Police Officer Certifications, and even First Responder and Active Shooter Training. Defendant is aware of the pertinent regulations and appropriate behavior surrounding many of the situations in which she has been charged. The

Defendant's prior arrests did not result in convictions, but they do demonstrate her familiarity with the consequences which come from violent actions.

Finally, the Defendant has multiple Civil Protection Orders against her. From 2012 to 2023 there were eight different petitions for protective orders. The community members surrounding the Defendant clearly do not trust her. The Defendant has a clear pattern of betraying fellow community members, violating the most fundamental of laws, and a habit for engaging in unjustified violence. For these reasons and the foregoing ones the Defendant needs one year of incarceration, not just as an appropriate consequence, but especially for the protection of the public.

### C. The Sentence Must Reflect the Seriousness of the Offense, Afford Adequate Deterrence to Criminal Conduct, and Protect the Public From Further Crimes

The Defendant's behavior displayed a lack of remorsefulness which warrants one year of incarceration. Because of the Defendant's actions here, the victim was bleeding and required medical attention. Specifically, the victim had multiple teeth loosened and had to be examined for further head injury. The imbalance of power at the time of the stomp reflected a disregard for the welfare of the victim and amounted to a serious offense deserving of incarceration. While Defendant had collected her belongings and was able to easily navigate through the restaurant, the victim lay defenseless on the floor and incapable of seeing. Put slightly differently, the victim in the case before the Court was completely vulnerable.

Moreover, because the Defendant displayed no remorse for her behavior this period of incarceration is necessary to deter further criminal conduct and protect the public from further crimes by the defendant. A period of incarceration for the Defendant is necessary to communicate

to the community that it is unacceptable for a LEO to inflict violence on another, defenseless individual. This infliction of violence is especially egregious when the Defendant wears the uniform of a member of law enforcement.

### D. Unwarranted Sentencing Disparities

The District of Columbia Circuit has recognized that there will "inevitably . . . [be] sentencing disparities and inequities that can be explained by little more than the identities of the sentencing judges." *United States v. Gardellini*, 545 F.3d 1089, 1096 (D.C. Cir. 2008). The Guidelines "reduce unwarranted federal sentencing disparities," *Freeman v. United States*, 564 U.S. 522, 525 (2011), by "creat[ing] a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences." *Id.* at 533. A sentencing court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" by "correctly calculat[ing] and carefully review[ing] the Guidelines range." *Gall v. United States*, 552 U.S. 38, 54 (2007). The United States' recommendation is consistent with the recommendation in the PSI.

## III.   Fines

### A.  Sentencing Guideline

Because the offense level is 13, pursuant to U.S.S.G. § 5E1.2 should this court choose to impose a fine the government recommends a fine between $7,500 and $75,000. However, consistent with the factors considered above and given that no significant property damage occurred which necessitates restitution the United States does not recommend a fine.

## CONCLUSION

The United States respectfully submits that a sentence of one year of incarceration is an appropriate and fair sentence considering the offense conduct, the need for deterrence, and the history and characteristics of the Defendant.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By: /s/ Michael T. Truscott
MICHAEL T. TRUSCOTT
D.C. Bar No. 1685577
Assistant United States Attorney
Fraud, Public Corruption, and Civil Rights Section
601 D Street, NW, Room 5.1513
Washington, DC 20530
(202) 252-7223
Michael.truscott2@usdoj.gov